```
IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION
```

| | | |
|---|---|---|
| Jeffery Moore, | ) | Case No. 8:11-cv-01311-DCN-JDA |
| | ) | |
| Plaintiff, | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| v. | ) | |
| | ) | |
| Sheriff Tony Davis, Major Lonnie Smith, | ) | |
| and Captain Middleton, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This matter is before the Court on Defendants' motion for summary judgment. [Doc. 37.] Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and to submit findings and recommendations to the District Court.

Plaintiff, proceeding pro se, brings this action against Sheriff Tony Davis ("Davis"), Major Lonnie Smith ("Smith"), and Captain Middleton ("Middleton"; collectively, "Defendants"). [Doc. 1.] Defendants filed their motion for summary judgment on December 22, 2011. [Doc. 37.] By Order filed December 27, 2011, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), Plaintiff was advised of the dismissal/summary judgment procedure and the possible consequences if he failed to adequately respond to the motion. [Doc. 38.] Plaintiff filed a response on January 5, 2012 [Doc. 40], and Defendants filed a reply on January 17, 2012 [Doc. 42]. Accordingly, the motion is now ripe for review.

## BACKGROUND

Plaintiff, an inmate at the Greenwood County Detention Center ("GCDC"), alleges his legal mail was opened before he received it on May 5, 2011 and May 20, 2011. [Doc. 1 at 3.] Plaintiff states he is "convinced that the administrating staff here at the Greenwood County Detention Center is opening and reading [his] legal mail which is in violation of [his] constitutional rights." [*Id.*] Plaintiff further alleges the contents of the legal mail contained facts about a pending case; therefore, Plaintiff seeks to have the case dismissed and money damages. [*Id.* at 4.]

## APPLICABLE LAW

**Liberal Construction of Pro Se Complaint**

Plaintiff brought this action pro se, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. Even under this less stringent standard, however, the pro se complaint is still subject to summary dismissal. *Id.* at 520–21. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the plaintiff's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Requirements for a Cause of Action Under § 1983**

Section 1983 provides a private cause of action for plaintiffs alleging constitutional violations by persons acting under color of state law. Section 1983 provides, in relevant part,

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. To establish a claim under § 1983, a plaintiff must prove two elements: (1) that the defendant "deprived [him] of a right secured by the Constitution and laws of the United States" and (2) that the defendant "deprived [him] of this constitutional right under color of [State] statute, ordinance, regulation, custom, or usage." *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (citation and internal quotation marks omitted).

The under-color-of-state-law element, which is equivalent to the "state action" requirement under the Fourteenth Amendment,

> reflects judicial recognition of the fact that most rights secured by the Constitution are protected only against infringement by governments. This fundamental limitation on the scope of constitutional guarantees preserves an area of individual freedom by limiting the reach of federal law and avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed.

*Id.* at 310 (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998)) (internal citations and quotation marks omitted). Nevertheless, "the deed of an ostensibly private organization or individual" may at times be treated "as if a State has caused it to be performed." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic*

*Ass'n*, 531 U.S. 288, 295 (2001). Specifically, "state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Id.* (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)). State action requires both an alleged constitutional deprivation "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible," and that "the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). A determination of whether a private party's allegedly unconstitutional conduct is fairly attributable to the State requires the court to "begin[ ] by identifying 'the specific conduct of which the plaintiff complains.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (quoting *Blum* v. *Yaretsky*, 457 U.S. 991, 1004 (1982)).

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all

4

inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

## **DISCUSSION**

In their motion for summary judgment, Defendants argue summary judgment should be granted because Plaintiff's allegations do not rise to the level of a constitutional violation; Defendants are entitled to qualified immunity; Defendants cannot be held liable under the doctrine of respondeat superior; Defendants are not liable based on the theory of supervisory liability; and to the extent Plaintiff bases his claim on state law, Plaintiff has no claim under state law. [Doc. 37-1.] The Court agrees summary judgment should be granted.

**Liability Under the Doctrine of Respondeat Superior and Based On the Theory of Supervisory Liability**

Initially, the Court notes that neither Davis nor Smith is even mentioned in the text of the Complaint. While Middleton is mentioned in the Complaint, the Complaint contains no specific allegation that Middleton actually opened Plaintiff's mail. Instead, Plaintiff alleges that "staff" at GCDC is opening and reading Plaintiff's legal mail. [Doc. 1 at 3; *see also* Doc. 40 at 2 (stating "Captain Middleton is responsible for all incoming mail" and "I know that someone here at GCDC opened my legal mail" but failing to allege Middleton opened the mail).] Because there is no doctrine of respondeat superior in § 1983 claims, *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691–94 (1978), a

6

defendant is liable in his individual capacity only for his personal wrongdoing or supervisory actions that violated constitutional norms, *see Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (setting forth elements necessary to establish supervisory liability under § 1983). A plaintiff must establish three elements to prevail under § 1983 on a theory of supervisory liability:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices[]"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Id.* (citations omitted).[1]

Plaintiff has failed to allege facts sufficient to demonstrate any personal or supervisory wrongdoing by Defendants and, therefore, Defendants are entitled to summary judgment. In an abundance of caution, however, the Court will address Plaintiff's claim.

---

[1] This is a heavy burden; in fact, the Supreme Court in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), may have entirely abrogated supervisory liability in *Bivens* actions. *See Ashcroft*, 129 S. Ct. at 1957 (Souter, J., dissenting) ("Lest there be any mistake, . . . the majority is not narrowing the scope of supervisory liability; it is eliminating *Bivens* supervisory liability entirely. The nature of a supervisory liability theory is that the supervisor may be liable, under certain conditions, for the wrongdoing of his subordinates, and it is this very principle that the majority rejects."); *see also Jones v. Corr. Care Solutions*, No. 0:09-cv-269, 2010 WL 2639788, at * 2 (D.S.C. June 7, 2010). A *Bivens* action "is the 'federal analog to suits brought against state officials under . . . § 1983.'" *Id.* at 1948 (quoting *Hartman v. Moore*, 547 U.S. 250, 254 (2006)). Therefore, the Supreme Court's reasoning may extend to abrogate supervisory liability in § 1983 actions as well as *Bivens* actions.

**Claim Regarding Legal Mail**

Generally, a prisoner enjoys a First Amendment right to receive and send mail, but prison officials may adopt regulations that impinge on a prisoner's constitutional rights if those regulations are "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). Legitimate penological interests include preserving prison security and maintaining order and discipline. Moreover, in noting the delicate nature of prison management, the Supreme Court has "afforded considerable deference to the determinations of prison administrators who, in the interest of security, regulate the relations between prisoners and the outside world." *Thornburgh v. Abbott*, 490 U.S. 401, 408 (1989) (citation omitted).

The Fourth Circuit, in *Altizer v. Deeds*, 191 F.3d 540, 547–48 (4th Cir. 1999), held "the opening and inspecting of an inmate's outgoing mail is reasonably related to legitimate penological interests, and, therefore, constitutional . . . ." However, in a footnote, the court noted "[i]nspecting an inmate's legal mail may implicate the inmate's Sixth Amendment right to communicate freely with his attorney in a criminal case." *Id.* at 549, n.14 (citing *Wolff v. McDonnell*, 418 U.S. 539, 575 (1974)). Legal mail may not be opened outside of the presence of the prisoner-addressee. *See Wolff*, 418 U.S. at 575. However, to state a claim for a constitutional violation, a plaintiff must show actual injury by the opening. *Lewis v. Casey*, 518 U.S. 343, 352–54 (1996). To show an actual injury, an inmate must "demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded." *Id.* at 353. The prisoner must make specific allegations as to the actual injury sustained. *See Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (holding the plaintiff failed to identify any actual injury resulting from official conduct); *Strickler v. Waters*, 989 F.2d 1375,

1384 (4th Cir. 1993) (holding the plaintiff had a "basic requirement that he show specific harm or prejudice from the allegedly denied access").

Here, even assuming a named Defendant opened and read the mail, which is not specifically alleged in the Complaint,[2] Plaintiff fails to allege specific facts that would tend to show a pending non-frivolous legal case, or any other legal matter, has been adversely affected due to his mail allegedly being opened and/or read outside his presence. Plaintiff alleges, "I had some writing in that mail that contained some facts about my pending case." [Doc. 1 at 4.] However, this conclusory allegation fails to rise to the level of a specific allegation about an actual injury sustained. Plaintiff fails to allege how GCDC staff opening and/or reading the mail would have prevented Plaintiff from proceeding with his claims. Plaintiff does not allege his access to the courts has been harmed in any way or that his mail was deliberately or negligently stolen, misplaced, or missing.

To the extent Plaintiff alleges claims pursuant to other provisions of the Constitution, such claims likewise do not provide him any relief because his allegations fail to state a claim upon which relief may be granted. Plaintiff does not allege that any confidential correspondence with his attorney was disclosed, causing Plaintiff to be deprived of effective assistance of counsel. *Cf. United States v. Stotts*, 925 F.2d 83, 86–88 (4th Cir. 1991) (noting the contours of prison inmates' constitutional rights are imprecise, upholding the Bureau of Prisons' regulations regarding opening and reading mail, and noting that North Carolina's different approach to legal mail was not evidence that the Bureau of Prisons'

---

[2]Middleton's affidavit states inmate mail is initially received at the Greenwood County Sheriff's Office and then brought over to GCDC, where a staff member sorts it and another staff member distributes it. [Doc. 37-2 ¶¶ 3–4.] Middleton further states that she was notified Plaintiff's mail had been opened and personally gave the mail to Plaintiff, explaining that she was unaware of when or by whom the envelope had been opened but it was opened before it was given to Middleton. [*Id.* ¶ 10.]

9

method was unconstitutional). The alleged legal mail included correspondence with the court that is often public record and available for public viewing. *See Va. Dep't of State Police v. Wash. Post*, 386 F.3d 567, 575–76 (4th Cir. 2004) (noting the common law presumes a right of the public to inspect and copy all judicial records and documents). To the extent Plaintiff alleges he was deprived of his property, loss of property caused by negligence of prison officials is not a deprivation within the meaning of the Due Process Clause. *Daniels v. Williams*, 474 U.S. 327, 331–34 (1986). Moreover, the Fourth Amendment is generally not applicable to searches of prison cells, and prisoners have no legitimate expectation of privacy in their possessions. *Hudson v. Palmer*, 468 U.S. 517, 525–26 (1984). Even liberally construing the Complaint, Plaintiff's alleged facts do not state cognizable constitutional claims.

**Qualified Immunity**

Defendants also are entitled to qualified immunity. Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Thus, qualified immunity is lost if an official violates a constitutional or statutory right of a plaintiff that was clearly established at the time of the alleged violation such that an objectively reasonable official in the official's position would have known of the right. *Id.* Further, qualified immunity is "an immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

To determine whether qualified immunity applies, a court must determine "'whether the plaintiff has alleged the deprivation of an actual constitutional right at all[] and . . .

whether that right was clearly established at the time of the alleged violation.'" *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (quoting *Conn v. Gabbert*, 526 U.S. 286, 290 (1999)). District court and courts of appeals judges are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Here, as discussed above, Plaintiff's allegations fail to demonstrate that Defendants violated Plaintiff's constitutional rights. Therefore, the Court finds Defendants are entitled to qualified immunity.

**State Law Claims**

To the extent Plaintiff attempts to allege a state law claim in addition to his § 1983 claim, such a state law claim could be heard by this Court only through the exercise of supplemental jurisdiction, which allows federal courts to hear and decide state law claims along with federal law claims.[3] Federal courts are permitted to decline supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3), however, if "the district court has dismissed all claims over which it has original jurisdiction." To the extent Plaintiff bases his claim on state law, the Court recommends that the district judge decline to exercise supplemental jurisdiction in this case.

---

[3]A civil action for Plaintiff's state law claims could be cognizable in this Court under the diversity statute, if that statute's requirements are satisfied. However, this Court does not have diversity jurisdiction in this case because Plaintiff and Defendants are all citizens of the State of South Carolina, which defeats the required complete diversity of parties. *See* 28 U.S.C. § 1332.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends Defendants' motion for summary judgment be GRANTED.

IT IS SO RECOMMENDED.

<u>s/Jacquelyn D. Austin</u><br>
United States Magistrate Judge

May 22, 2012
Greenville, South Carolina